COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| CLINICAL PATHOLOGY LABORATORIES, INC., | § | No. 08-19-00067-CV |
| | § | Appeal from the |
| Appellant, | § | |
| | § | 210th Judicial District Court |
| v. | § | |
| | § | of El Paso County, Texas |
| JUAN POLO, | § | |
| | § | (TC#2018DCV2966) |
| Appellee. | § | |

# **O P I N I O N**

Unfortunate as it may be, employees are sometimes fired.   And it is hard to imagine that any worker would be discharged from employment without some internal discussion by the employer, whether from manager-to-manager, manager-to-staff, or staff-to-manager, not to mention the actual communication of the termination decision to the discharged employee.   In this appeal we are again confronted with the question of whether those types of discussions are "communications" that might invoke the protection of free speech and associational rights under the Texas Citizens Participation Act ("TCPA").   The question is more than academic, because once the TCPA is invoked, the plaintiff is early on put to the task of presenting by clear and specific

evidence a prima facie case for each essential element of the claim in question.[1]  Failure to make that case exposes the employee not only to dismissal of their suit, but attorney's fees and sanctions.[2]

The Texas Supreme Court has already decided that some purely internal company discussions can invoke the TCPA.[3]  But the same court has also cautioned that discussions attendant to a "private contract dispute affecting only the fortunes of the private parties" do not involve a "matter of public concern"--a necessary predicate under the TCPA.[4]  Because we conclude that the employer in this wrongful discharge case failed to show, by a preponderance of the evidence, that the discussions leading up to the termination of the plaintiff related to a matter of public concern, or that the plaintiff is suing over those discussions as distinct from the termination decision itself, we affirm the trial court's order declining to apply the TCPA.

## I.  FACTUAL BACKGROUND

Appellant Clinical Pathologies Laboratories ("CPL") terminated Appellee Juan Polo ("Polo") from his employment as a phlebotomist after Polo suffered a work-related injury and filed a worker's compensation claim.  CPL is "a reference laboratory" that performs laboratory testing for its clients, which includes physicians, clinics, and hospitals.  Polo was employed by CPL as a

---

[1] TEX.CIV.PRAC. & REM.CODE ANN. § 27.005(c).

[2] The applicable provision of the TCPA here provided that if "the court orders dismissal of a legal action" it "shall award to the moving party" both "(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action" and "(2) sanctions . . . sufficient to deter" against "bringing similar actions." Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 TEX.GEN.LAWS 961, 963 (amended 2019) (current version at TEX.CIV.PRAC. & REM.CODE ANN. § 27.009(a)(1)-(2)).

[3] *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).

[4] *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019) ("A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words.").

2

phlebotomist and driver from March 13, 2012 until his termination on November 14, 2016. Among other things, phlebotomists are tasked with obtaining blood samples from patients.

On August 22, 2016, Polo was involved in a work-related motor vehicle accident while driving a company vehicle. As Polo was unable to immediately return to work, he filed for and received worker's compensation benefits. The parties dispute, however, what happened next. According to Polo, his physician released him to perform light duty work on August 30, 2016, with some restrictions on the movement of his ankle. He claims that despite this limitation, he was physically able to perform the essential functions of his job as a phlebotomist, but CPL nevertheless refused to allow him to return to work on light duty. CPL, however, contends that it never received notification that Polo could return to work on light duty, and that instead, it received multiple reports from Polo's physician indicating that Polo would not be able to return to work for the foreseeable future.

CPL sent a letter to Polo dated November 8, 2016, informing him that it was terminating his employment. In the letter, CPL stated that it had accommodated Polo's need for time off since his work-related accident, but that this had "placed a hardship on the department," and that, despite its concern for Polo's health, CPL could no longer continue to carry him as an employee. The letter further stated that when Polo was fully recovered and released by his physician to return to work, he could reapply for employment with CPL.

## II. PROCEDURAL BACKGROUND

### A. Polo's Lawsuit

Polo filed his Original Petition against CPL alleging that it had terminated him in violation of Chapter 451 of the Texas Labor Code. *See* TEX.LAB.CODE ANN. § 451.001 (a person may not discharge or in any other manner discriminate against an employee who has filed a worker's

3

compensation claim in good faith). In his petition, Polo also alleged that after he filed the worker's compensation claim, he was "subjected to a negative attitude" by CPL due to the filing, and that CPL's management had informed him that "he needed to hurry up and return to work on full release."

In its answer to the petition, CPL denied that it terminated Polo as the result of the filing of his worker's compensation claim, asserting instead that its decision to terminate Polo was "induced by business necessity or bona fide occupational qualifications." CPL further elaborated that its termination decision was based on Polo's inability to perform the "essential functions of the job," and that the termination was made "according to a uniform application of a company policy."

## B. The TCPA Motion to Dismiss

CPL thereafter filed its motion to dismiss Polo's lawsuit pursuant to the TCPA. In its motion, CPL alleged that Polo's "claims in his suit are based on, related to, or in response to CPL's exercise of its right of free speech on a matter of public concern, or its right to associate, and are subject to dismissal under the TCPA." In particular, CPL argued that the "unequivocal language" in Polo's Original Petition demonstrated that he was complaining about the communications that took place among CPL management or employees, which pertained to, "among other things, Plaintiff's extended time off, which placed CPL's phlebotomy department in a hardship," and caused CPL to be "unable to provide the best service to its clients in the medical community." Although the record does not contain any of the actual alleged communications, CPL contends that these communications were "made in connection with a matter of public concern," as defined by the TCPA, i.e., health and safety issues, given CPL's role in the medical community and Polo's employment as a phlebotomist.

4

*1. Klein's affidavit*

In support of its motion, CPL attached an affidavit from Debbie Klein, CPL's Vice-President of Human Resources. In her affidavit, Klein described the several regulations and guidelines that a clinical lab must follow in conducting its operations, and their connection to the health and safety of its customers. She further explained that phlebotomists, such as Polo, are required to understand and follow various regulations and guidelines, and that they are responsible for adhering to "departmental policies and procedures to include departmental programs, quality control, quality assurance, and safety."

Klein explained that in general, when CPL does not have a fully staffed phlebotomy department, it "risks a loss of services" to the community, and it causes "a delay in diagnosing, preventing, or treating disease which would be harmful to [the] community." Klein explained that Polo's inability to return to work as a phlebotomist caused "CPL's ability to provide health services to suffer," and it eventually became "economically necessary" to hire a replacement. According to Klein, after CPL received a Texas Workers' Compensation Work Status Report, dated October 31, 2016, stating that Polo would be unable to return to work until November 30, 2016, CPL called Polo about the situation to determine if his physician would release him to work sooner. But after receiving no response, CPL sent Polo the November 8, 2016 termination letter.

Klein also concluded from a review of Polo's Original Petition, that his lawsuit was based on communications that CPL employees had with each other and with Polo regarding the decision to terminate him. She also concluded that the claim was related to internal communications CPL's staff had with each other discussing the "proper management and staffing of a clinical laboratory" and the "provision of services, which CPL offers in the marketplace." She did not, however, provide the substance of any of those communications, or other details regarding them.

5

In addition, Klein expressed her belief that Polo's lawsuit related to various communications that CPL and its employees had with "state and federal governments, and among each other, with regard to compliance with [CPL's] reporting obligations," and CPL's need to comply with the various "standards and regulations" imposed upon it to ensure the health and safety of the community. Once again, however, Klein did not provide the substance of any such communications or explain how they related to Polo's absence from work.

### 2. *Polo's opposition to the motion and supporting affidavit*

Polo opposed CPL's motion to dismiss, contending that his lawsuit was not based on, related to, or made in response to any of the above-described communications, and was instead based solely on CPL's purely private acts of allegedly retaliating against him for filing his worker's compensation claim. He further alleged that CPL's termination decision was not related to any health or safety concerns, and that it was instead related solely to CPL's private "economic concerns." Polo attached his own affidavit in which he averred that he had been released to light duty work in August of 2016, but that CPL had refused to let him return to work, and that its decision to terminate him less than three months later was a "pre-text and a cover up" of CPL's true intent, which was to retaliate against him for filing his worker's compensation claim. In addition, Polo alleged that at an unspecified time, CPL's management had expressed to him that it "did not want people to file worker's compensation claims as that is a loss of money."

Following a hearing on the motion, the trial court denied the motion, and this interlocutory appeal follows. In the three issues before us CPL contends that the trial court erred by denying its TCPA motion to dismiss. More specifically, its first issue contends that it met the initial burden of demonstrating that Polo's lawsuit constituted a legal action that was based on, related to, or in response to CPL's exercise of its right of free speech on a matter of public concern, or its right to

6

associate.   In its second issue, CPL contends that Polo failed to establish a prima facie case on the essential elements of his claim of retaliatory discharge, as required by the TCPA, and in its third issue, CPL argues in the alternative that it established a valid defense to Polo's claims.

### III.   APPLICABLE LAW AND STANDARD OF REVIEW

The Legislature passed the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."   *Pacheco v. Rodriguez*, 600 S.W.3d 401, 404 (Tex.App.--El Paso 2020, no pet.) *citing* TEX.CIV.PRAC.& REM.CODE ANN. § 27.002; *see also MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 188 (Tex.App.--El Paso 2017, no pet.).   In other words, the TCPA's "purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits."   *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015), *citing* TEX.CIV.PRAC. & REM.CODE § 27.002.

In determining whether a legal action should be dismissed under the TCPA, the statute requires courts to employ a multi-step decisional process.   Under the first step, the trial court must determine if the TCPA applies.   In that step, the moving party must show by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of: "(A) the right of free speech; (B) the right to petition; or (C) the right of association[.]" TEX.CIV.PRAC. & REM.CODE ANN. § 27.005(b)(1); *see also In re Lipsky*, 460 S.W.3d at 586.   If the movant carries this initial burden, the trial court must then determine whether the non-movant's claims fall within any statutory exception raised by the non-movant.   *Pacheco*, 600 S.W.3d at 405.   The non-movant carries the burden of proving that a statutory exemption applies to his

7

claims.  *Id., citing Kirkstall Rd. Enterprises, Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex.App.--Dallas 2017, no pet.).[5]

If the movant meets the initial burden of demonstrating that the TCPA applies, and the trial court determines that no exception applies, the burden then shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question."  *Pacheco*, 600 S.W.3d at 405, *citing* TEX.CIV.PRAC. & REM.CODE ANN. § 27.005(c); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019) And finally, if the non-movant meets that burden, the movant can still win dismissal if it establishes "by a preponderance of the evidence each essential element of a valid defense to the non-movant's claim."  *Id.* at 132, *citing* TEX.CIV.PRAC. & REM.CODE ANN. § 27.005(d).

We review de novo a trial court's ruling on a TCPA motion to dismiss.  *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (Supreme Court conducts a de novo review of a court of appeals' determination regarding whether the parties met their respective burdens of proof under the TCPA); *MVS Int'l Corp.*, 545 S.W.3d at 189-90 (conducting a de novo review of trial court's ruling on a TCPA motion).   In conducting our review, as mandated by the TCPA, we consider all "pleadings and supporting and opposing affidavits" stating the facts on which the liability or defense is based.  *Creative Oil & Gas, LLC*, 591 S.W.3d at 132, *citing* TEX.CIV.PRAC. & REM.CODE ANN. § 27.006(a).   We further view the pleadings and evidence in the light most favorable to the non-movant in determining whether dismissal under the TCPA is warranted.  *See Pacheco*, 600 S.W.3d at 405, *citing MVS Int'l Corp.*, 545 S.W.3d at 189-90.

---

[5] Among others, the TCPA exempts from its application, "a legal action brought under the Insurance Code or arising out of an insurance contract."  TEX.CIV.PRAC. & REM.CODE ANN. § 27.010(a)(4).   Polo contends that his claim arises out of an insurance contract, i.e., CPL's agreement to provide him with worker's compensation coverage, and that his claim was therefore exempted from the TCPA's application under this statutory exception.   Based on our resolution of the case we need not address this issue.

To the extent that we need to interpret the statutory language, our objective is to "give effect to the Legislature's intent, which requires us to first look to the statute's plain language." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). If the statute's language is unambiguous, "we interpret the statute according to its plain meaning." *Id.* And "[w]e presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Id.*

## IV. THE RIGHT OF FREE SPEECH UNDER THE TCPA

We first consider whether Polo's claim of retaliatory discharge was based on, related to, or made in response to CPL's right of free speech within the meaning of the TCPA. The exercise of the right of free speech is defined by the TCPA as a "communication made in connection with a matter of public concern." TEX.CIV.PRAC. & REM.CODE ANN. § 27.001(3). In order to implicate its right of free speech, CPL was therefore required to demonstrate that Polo's lawsuit alleged any such communications. *See Pacheco*, 600 S.W.3d at 409, *citing Pinghua Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 712-17 (Tex.App.--Dallas 2019, no pet.); *see also Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798 (Tex.App.--Fort Worth 2018, pet. denied) (recognizing that a claim must "allege a communication" in order to invoke the TCPA).

A broad range of communications, in various mediums, are covered by the TCPA. TEX.CIV.PRAC. & REM.CODE ANN. § 27.001(1) (defining "communication" to include the "making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (recognizing that under the TCPA, "[a]lmost every imaginable form of communication, in any medium, is covered."). Moreover, as the Texas Supreme Court has recognized, even private communications are covered by the TCPA, provided that they were made

in connection with matter of "public concern." *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017); *see also Lippincott*, 462 S.W.3d at 509 (recognizing that the "plain language of the statute imposes no requirement that the form of the communication be public.").

Therefore, our initial task is to determine whether Polo's lawsuit was based on, related to, or made in response to any "communications" that would invoke the TCPA, or alternatively, whether, his lawsuit was factually predicated on CPL's decision to terminate him, rendering it outside the TCPA's scope.

## A. Communications or Conduct?

Polo contends that his lawsuit was based solely on CPL's decision to terminate him in retaliation for filing his worker's compensation claim. And he argues that the decision was not factually predicated on any specific communications made by CPL. Rather, he urges that at most it was based on conduct, which this and other courts have found to be outside of the scope of "communications" which might trigger the TCPA.[6] *See Pacheco*, 600 S.W.3d at 410 (TCPA did not apply to defendant's cross-claim alleging negligent conduct); *see also Smith*, 565 S.W.3d at 798-799 (TCPA was not invoked where plaintiff's "aider-liability" claims were based solely on conduct and did not allege a communication as defined by the TCPA); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 207 (Tex.App.--Austin 2017, pet. dism'd) (TCPA did

---

[6] CPL contends that we should not consider this argument on appeal, as Polo did not make this same argument in the trial court. We disagree. Polo made this general argument in his response to CPL's motion to dismiss, when he asserted that his lawsuit was not based on any communications made by CPL, and that it was instead based on CPL's action in terminating him. At most, Polo has elaborated on this argument in his brief on appeal by citing to additional case law and authorities. *See Adams*, 547 S.W.3d 890, 896-97, *citing Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.") Moreover, because an appellate court must decide on a de novo basis whether the TCPA applies, our focus must be on whether, as a matter of law, the TCPA applies to Polo's lawsuit, and we must therefore not "cabin[] our TCPA analysis to the precise legal arguments or record references" made by the parties in the trial court, and we must instead decide the applicability of the TCPA based on a "holistic review" of the pleadings and evidence presented in the trial court. *Adams*, 547 S.W. 3d at 897.

not apply to plaintiff's claims to the extent that they were predicated factually on conduct by defendant rather than on "communications" as defined by the TCPA).[7] [8]

CPL, on the other hand, contends that Polo's lawsuit was at the very least related to (1) the communications that took place among CPL's managers regarding Polo's absence from work, (2) their communications made in deciding to terminate Polo, and (3) the communications it had with Polo on the subject. In particular, CPL points out that in both his pleadings and his affidavit, Polo contends that the reasons CPL gave for his termination in its November letter were pretextual or false. In addition, CPL points out that Polo alleged that he had other communications, or at the least, interactions, with CPL's management, claiming that CPL's management had developed a "negative attitude" toward him after he filed his worker's compensation claim, had informed him that he "needed to hurry up and return to work on full release," and that a CPL employee told him that the company disfavored worker's compensation claims due to the economic costs involved.

In truth, almost every lawsuit at its core is based on some decision, followed by conduct, that is bracketed by communications in one form or another by or between the parties. For instance, a breach of a contract presupposes a decision followed by conduct, which is normally

---

[7] We recognize that some expressive conduct may constitute speech, but that is not claimed to be the case here. *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 403 (1989) (burning the U.S. flag constituted expressive conduct invoking the First Amendment); *Ex parte Thompson*, 442 S.W.3d 325, 336 (Tex.Crim.App. 2014) (photographing others can be inherently expressive conduct protected by First Amendment).

[8] CPL, however, disagrees with the general statement that conduct is not protected, citing cases in which courts have used the term "protected conduct" when discussing whether a defendant was exercising the right to free speech or association within the meaning of the TCPA. These cases, however, use the term "protected conduct" in collectively describing the three rights listed in the TCPA (rights of free speech, association, and petition). But even under these cases, a court still has must identify the existence of a "communication" before a court can find that those rights were implicated by the TCPA. *See, e.g.*, *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 872 (Tex.App.--Austin 2018, pet. denied) (recognizing that the term "communication" is a "component of all three forms of protected conduct under the TCPA."); *see also Coleman*, 512 S.W.3d at 901 (plaintiff's claims for defamation and other related claims asserted challenges to statements made by his employer, which constituted "speech the Legislature intended to safeguard through the TCPA."); *Cavin v. Abbott*, 545 S.W.3d 47, 61 (Tex.App.--Austin 2017, no pet.) (plaintiff's claim for defamation and other related claims were admittedly based on statements that would qualify as "communications" under the TCPA). As such, none of the cases cited by CPL alter our opinion that CPL was required to point to a communication to support its claim that the TCPA applies to Polo's lawsuit.

11

preceded by related emails, demand letters, or person-to-person discussions. A workplace accident may result from an ill-advised decision or action, often preceded by some directive communicated by the employer. And it would be rare for an employee to be discharged without some communication between employer and employee leading up to the termination decision. How then to apply the TCPA to protect free speech without swallowing the whole of tort and contract litigation? We find the answer to that question in two related ideas. First the TCPA itself requires that the movant show by *a preponderance of the evidence* that the legal action is based on, relates to, or is in response to the movant's exercise of one the enumerated rights. TEX.CIV.PRAC. & REM.CODE ANN. § 27.005(b); *see also In re Lipsky*, 460 S.W.3d at 586. Second, the Texas Supreme Court has directed that we undertake a "holistic" review of the record to answer that question. *Adams*, 547 S.W.3d at 897 ("Moreover, the unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings."). Viewed with those two ideas in mind, we agree with the trial court that the TCPA does not apply to this suit.

From the record as a whole, it seems clear that the decision to terminate Polo, followed by the act of terminating him are at the core of this lawsuit, as distinct from the several discussions and letters surrounding that decision. CPL could have had all the discussions that it did without exposing itself to Chapter 451 liability if it did not take the last step of actually terminating Polo. And as Polo also argues, the communications at most are "evidence" that the parties will likely present at trial to be used by the trier of fact in determining whether CPL had a retaliatory motive for terminating him, but the lawsuit is not itself factually predicated on them. *See In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex.App.--Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op., not designated for publication) (recognizing "a

12

distinction between communications used as evidence to support a claim . . . and a claim that is 'based upon, relate[d] to, or [ ] in response to' that communication under the TCPA.").[9]

The easier cases are those where the communication itself causes the harm and triggers liability. In *Coleman*, for instance, company managers accused a worker of falsely claiming he had filled out a safety related report. *Coleman*, 512 S.W.3d at 897. The accusation itself, even though made internally within the company, formed the basis of the defamation claim brought by the employee. *Id*. Similarly, in *Lippencott*, ostensibly private emails exchanged by hospital staff that accused a nurse practitioner of improper conduct constituted communications within the TCPA. *Lippincott*, 462 S.W.3d at 509. The substance of the emails formed the basis of the several claims, including defamation. *Id*.

A more difficult case to reconcile, and the one CPL relies on, is *Khalil v. Memorial Hermann Health System*, No. H-17-1954, 2017 WL 5068157, at *5 (S.D. Tex. 2017) (unpublished memorandum and order), in which the court determined that the TCPA was implicated in a plaintiff's age discrimination lawsuit. *Id*. However, in *Kahlil*, the plaintiff's claim of age discrimination was not based solely on her employer's decision to terminate the plaintiff from her employment but was instead factually predicated on allegedly discriminatory communications the plaintiff claimed led to her termination. In that case, the plaintiff-physician had been employed at the defendant hospital. She initially brought several claims in state court against the hospital, including, defamation, fraud, tortious interference with a contract, and age discrimination. Those claims arose from the hospital employees' criticism of her performance in various

---

[9] *See also Park v. Bd. of Trustees of California State Univ.*, 393 P.3d 905, 906-07, 911 (Cal. 2017) (holding that a plaintiff's claim may be struck under California's anti-SLAPP statute "only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted . . . [W]hile discrimination may be carried out by means of speech, such as a written notice of termination, and an illicit animus may be evidenced by speech, neither circumstance transforms a discrimination suit to one arising from speech.").

13

communications. She alleged those communications prevented her from retaining credentials at the hospital, which in turn, led to her termination of her employment at the hospital. *Id.* at *3, *citing Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *18 (Tex.App.--Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op. on rehr'g, not designated for publication). The defendant hospital moved to dismiss all of her state-law claims under the TCPA, with the exception of her age discrimination claim, arguing that those claims were made in response to the exercise of its right to free speech in engaging in the above-described communications. *Id.* The trial court agreed and granted the defendant's motion to dismiss, after which the plaintiff's sole remaining claim of age discrimination was removed to federal court. *Id.*

In the removed action, the defendant hospital moved to dismiss the age discrimination claim, again contending that it was made in response to its exercise of its right to free speech. *Id.* at *5. In granting the motion, the court reasoned that the plaintiff's age discrimination claim was based on the exact same communications criticizing her performance that formed the basis of her state court claims. She alleged that the hospital's personnel had a discriminatory motive for criticizing her performance, and that those criticisms ultimately led to her termination. *Id*. at *5. Relying on the same analysis as the state court did with respect to the plaintiff's other claims, the federal court concluded that the plaintiff's age discrimination claim was made in response to those communications, and that her claim therefore implicated the defendant's right to free speech within the meaning of the TCPA. *Id.*

As we recently recognized in *Sec. Serv. Fed. Credit Union v. Rodriguez*, No. 08-19-00154-CV, 2020 WL 1969399, at *4-5 (Tex.App.--El Paso Apr. 24, 2020, no pet.), the facts in *Khalil* were "unique," and provided an unusual example of how an age discrimination claim could be considered "speech-based." However, unlike the situation in *Khalil*, Polo's claim for retaliatory

14

discharge is not based on any unique set of facts that would render it a "speech-based" claim. As set forth above, Polo did not allege in his pleading that he was harmed by any defamatory or discriminatory statements made by CPL, or that the communications themselves led to his termination; instead, the only harm he alleges stemmed from CPL's conduct in terminating him after he filed his worker's compensation claim. At most he claims that the employer exhibited a negative attitude towards him after the injury, but holistically looking at the record, we find no statement or communication that underscores that claim. Stated otherwise, the claim is based on a termination, and not on any particular colloquy from the employer. Accordingly, we conclude that Polo's lawsuit was factually predicated on CPL's conduct in terminating him, rather than on any of CPL's communications, and we therefore conclude that his claim was not based on, related to, or made in response to any communications within the meaning of the TCPA.

### B. A Public Concern or a Private Interest?

Moreover, even if we were to agree with CPL that Polo's lawsuit was, at least indirectly related to the above-described communications, CPL would still have the burden of convincing us that the communications were made "in connection with a matter of public concern." *See Creative Oil & Gas, LLC*, 591 S.W.3d at 134, *citing* TEX.CIV.PRAC. & REM.CODE § 27.001(3) (defining the "exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern."). Under the former version of the TCPA, which was in effect at the time Polo filed his lawsuit, a "'[m]atter of public concern' include[d] an issue related to," among others, "health or safety."[10] *Coleman*, 512 S.W.3d at 899, *citing* former TEX.CIV.PRAC. & REM.CODE § 27.001(7).

---

[10] In the amended act, which would not apply to this case, a "matter of public concern" is redefined to constitute a statement or activity regarding: "(A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." TEX.CIV.PRAC. & REM.CODE ANN. § 27.001(7).

15

The Texas Supreme Court has held that in determining whether a communication was made in connection with a matter of public concern, even private communications relating to private disputes may on occasion fit within that category. *See Coleman*, 512 S.W.3d at 898, 901. However, the Supreme Court more recently cautioned that if a private dispute "affect[s] only the fortunes of the private parties involved," it is simply not a "'matter of public concern' under any tenable understanding of those words." *Id.* at 137. This Court, as well as many of our sister courts, have recognized this same distinction between matters of public concern (which invoke the TCPA) and matters involving only the parties' private pecuniary interests (which do not). *See, e.g.*, *Ridge Petroleum, Inc. v. Energy Ops, LLC*, No. 08-19-00078-CV, 2020 WL 1969398, at *9 (Tex.App.--El Paso Apr. 24, 2020, no pet.) (statements referenced in plaintiff's petition related only to the amount of royalties owed to a private party pursuant to a waste water disposal agreement, and therefore did not relate to a matter of public concern within the meaning of the TCPA.); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476-77 (Tex.App.--Houston [1st Dist.] 2020, pet. filed) (internal communications among parties regarding plaintiff's trade secrets had no public relevance beyond the pecuniary interests of the private parties, and were therefore not connected to a matter of public concern within the meaning of the TCPA); *Tex. Custom Wine Works, LLC v. Talcott*, 598 S.W.3d 380, 387 (Tex.App.--Amarillo 2020, no pet.) ("[T]o trigger the TCPA's protections, [the communication] must involve more than a handful of individuals communicating about a private business deal."); *Forget About It, Inc. v. Bio TE Med., LLC*, 585 S.W.3d 59, 67-68 (Tex.App.--Dallas 2019, pet. denied) ("a private communication made in connection with a business dispute is not a matter of public concern under the TCPA."); *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 239-40 (Tex. App.--Eastland 2019, no pet.) (communications that related only to the "parties' personal financial well-being," were not

16

made in connection with a matter of public concern within the meaning of the TCPA); *Mathiew v. Subsea 7 (US) LLC*, No. 4:17-CV-3140, 2018 WL 1515264, at \*4-5 (S.D. Tex. 2018) (communications regarding defendant's decision to terminate plaintiff, which pertained purely to defendant's economic interests, were not made in connection with a matter of public concern within the meaning of the TCPA).

In this appeal, CPL contends that its communications about Polo's absence and its decision to terminate Polo, were made in connection with health or safety issues, thereby making them a matter of public concern within the meaning of the TCPA. In support of its argument, CPL finds it significant that it conducts business in the health care field, providing laboratory services to the public, and that Polo's position as a phlebotomist was important to CPL's ability to effectively provide those services. But as the Dallas court recently explained, the mere fact that a defendant operates in the health care field is not sufficient to demonstrate that each and every communication it makes about one of its employees--even those employees who are health care workers--is related to a matter of public concern. *See U.S. Anesthesia Partners of Tex., P.A. v. Mahana*, 585 S.W.3d 625, 630-31 (Tex.App.--Dallas 2019, pet. denied) (recognizing that a private communication about an employee's alleged positive drug test or addiction was not a matter of public concern "merely because the employee happens to be a nurse"). To construe the TCPA otherwise to "denote that all private business discussions are a 'matter of public concern' if the business . . . is related to health or safety is a potentially absurd result that was not contemplated by the Legislature." *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 277 (Tex.App.--Dallas 2019, pet. denied). Instead, the focus must be on the communications themselves, and whether they were made in connection with a health or safety issue. *Mahana*, 585 S.W.3d at 630-31. In other words, the "communications do not become a matter of public concern simply based on the nature

17

of the parties' business," and instead, the communications themselves must have "some relevance to issues beyond the interests of the parties" to be considered matters of public concern under the TCPA. *See Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *7 (Tex.App.--Eastland Apr. 9, 2020, no pet.) (mem. op., not designated for publication); *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *4 (Tex.App.--Dallas May 15, 2019, no pet.) (mem. op., not designated for publication) (to determine whether the TCPA applies, a court "must look to the content of the communications themselves and not focus solely on the occupation of the speaker or the related industry"); *see also Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 828 (Tex.App.--Dallas 2020, pet. denied) (court must focus on the communication itself to determine whether it was made in connection with a matter of public concern or whether it was "simply a communication between private parties of matters of purely private concern.").

No doubt, when a health-care operator engages in communications relevant to an employee's ability to safely and competently provide medical services to patients, courts have held that these communications relate to health and safety issues impacting the public, and can be considered a matter of public concern within the meaning of the TCPA. *See, e.g.*, *Lippincott*, 462 S.W.3d at 509-10 (defendant's communications relating to plaintiff's ability to provide services to patients as a nurse anesthetist without endangering their health involved a matter of public concern); *see also Pisharodi v. Columbia Valley Healthcare Sys., L.P.*, No. 13-18-00364-CV, 2020 WL 2213951, at *3 (Tex.App.--Corpus Christi May 7, 2020, no pet. h.) (when a defendant's communications center on the plaintiff's "ability to provide competent medical services," the communications can be said to impact a matter of public concern); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 709 (Tex.App.--Amarillo 2018, pet. denied) (private communications relating to

a physician's "handling of specific cases, his medical competence, and disciplinary action" were "matters of public concern"); *Khalil*, 2017 WL 5068157, at *5-6 (communications criticizing the plaintiff-physician's competence related to health and safety issues and was therefore made in connection with a matter of public concern).

But here, we simply disagree that CPL has shown its communications regarding Polo's absence from his employment as a phlebotomist similarly focused on a public health concern as distinct from the parties' private employment dispute. First, other than the termination notice, none of the alleged communications appear in our record. Without being able to review the communications, we are unable to determine whether any of CPL's communications did in fact relate to public health or safety issues, or whether they were instead merely related to CPL's concern about how Polo's absence was affecting its business operations and its own pecuniary interests. *See Staff Care, Inc.*, 2019 WL 2121116, at n.3 (recognizing that without knowing its content, "a court cannot determine whether the alleged communication falls under the statutory definitions of the TCPA"); *see also Gaskamp*, 596 S.W.3d at 477-78 (record did not contain sufficient information from which it could be determined that plaintiff's lawsuit involved protected communications).

Nor is there any objective indication that a public health or safety concern actually factored into CPL's consideration to any significant degree. Nothing informs us, for instance, whether Polo was one of only a few phlebotomists such that his individual absence would meaningfully impact the community, or whether he was only one of a much larger group, where the health and safety impact of his loss would be no more than with any employee's departure. The record is replete, however, with references to CPL's concern with the financial impact Polo's absence was causing. For example, in the termination notice itself--which is the only communication that we

19

have in the record--CPL stated that Polo's absence was causing a "hardship" on the phlebotomy department, but made no mention of how the public may have been impacted by his absence.   In addition, in its answer to Polo's petition, CPL stated that its decision to terminate Polo was "induced by business necessity," again making no mention of any concerns it had about the public's health or safety.   And finally, in her affidavit, Klein averred that Polo's absence from his job had impacted the "work demands" at CPL's El Paso location, and that it had therefore become "economically necessary to hire a replacement for Mr. Polo."   While Klein did opine that being understaffed posed a "risk of loss of services to [the] community" and could have caused a "delay in diagnosing, preventing, or treating disease which would be harmful to [the] community," she couched this opinion in theoretical terms, and she failed to describe any communications that CPL managers had discussing how Polo's absence was impacting the public or patient safety.

Accordingly, we conclude that CPL failed to meet its burden of demonstrating that it engaged in any communications that could be considered a matter of public concern regarding Polo's termination within the meaning of the TCPA.   And, in turn, we therefore conclude that CPL has failed to establish that Polo's wrongful termination lawsuit was based on, related to, or made in response to CPL's exercise of its right of free speech.

## V.   THE RIGHT TO ASSOCIATE UNDER THE TCPA

We next consider CPL's argument that Polo's lawsuit was based on, related to, or made in response to CPL's exercise of its right to associate within the meaning of the TCPA.   The TCPA, as it existed when Polo filed his lawsuit, defined the "[e]xercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."   Act of May 18, 2011, 82nd Leg. R.S., ch. 341, 2011 TEX.GEN.LAWS 961, 963 (amended 2019) (current version at TEX.CIV.PRAC. & REM.CODE § 27.009(a)(1)-(2)).

20

Here, CPL contends that its managers joined together, within the meaning of the TCPA's right to associate, for the "same interest" of "keeping the phlebotomy services available to the public, and ensuring that Mr. Polo could provide those services."

As Polo points out, however, CPL once again provides little information about the identity of these managers or the content of these communications. Moreover, we have difficulty concluding that CPL's managers, who were already associated with each other as employees of an ongoing business, could be said to have "join[ed] together" for the purpose of communicating about Polo's employment, within the meaning of the TCPA's right to associate provision. *See generally Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 287 (Tex.App.--Dallas 2015, pet. denied) (concluding that the TCPA's right to associate provision was not implicated where the company's managers exchanged private, internal communications regarding the plaintiff's employment). More importantly, we disagree with CPL's argument that it was not required to establish that its managers joined together for a "public purpose" in order to invoke the TCPA's right to associate, and that the right to associate could be implicated where the managers joined together for a "private purpose," as long as they were otherwise "pursuing a common interest."

The former version of the TCPA did not expressly impose a requirement that the "common interest" element of the right to associate had to relate to a public concern or purpose. TEX.CIV.PRAC. & REM.CODE § 27.001(2). Yet several courts that have directly addressed the issue conclude that the TCPA's right to associate provision may not be read so broadly. *See, e.g.*, *Kawcak v. Antero Res. Corp.*, 582 S.W3d 566, 581, 588 (Tex.App.--Fort Worth 2019, pet. denied) (holding that the definition of "'the right of association' requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit"); *see also Dyer v. Medoc Health Services, LLC*, 573 S.W.3d 418, 426-27 (Tex.App.--Dallas 2019, pet. denied) ("to constitute an exercise of

21

the right of association under the [TCPA], the nature of the 'communication between individuals who join together' must involve public or citizen's participation."); *Tex. Custom Wine Works, LLC*, 598 S.W.3d at 388 (concluding that the TCPA's right to associate provision did not apply to plaintiff's claims for fraud, promissory estoppel, and breach of fiduciary duty where there were no communications about an issue of public concern, and the only interests at stake were the parties' private interests). As these courts recognize, allowing a defendant to seek dismissal of a lawsuit under the TCPA by arguing that he had the right to associate on a matter relating solely to his own personal interests, does nothing to further the TCPA's stated purpose of eliminating lawsuits designed to suppress the defendant's exercise of his constitutional rights while maintaining a plaintiff's right to bring a meritorious suit for damages. *See BusPatrol Am., LLC v. Am. Traffic Sols., Inc.*, No. 05-18-00920-CV, 2020 WL 1430357, at *8 (Tex.App.--Dallas Mar. 24, 2020, no pet.) (mem. op., not designated for publication) ("Construing the TCPA to find a right of association simply because there are communications between parties with a shared interest in a private business transaction does not further the TCPA's purpose to curb strategic lawsuits against public participation."); *Kawcak,* 582 S.W.3d at 573 (recognizing that the definition of "common interests" in the TCPA's "right to associate" provision should be read in harmony with the Act's stated purpose, and that a common interest must therefore have "group, community, or public attributes"). For the same reasons we find that the claims here are essentially a private dispute over a private matter. We similarly conclude that no public purpose associational interests are implicated.

Accordingly, we overrule Issue One. Because we resolve the case based on the first issue, finding that the TCPA does not apply to Polo's retaliatory discharge claim, we need not discuss CPL's remaining two issues. *See Chandni I, Inc. v. Patel*, 601 S.W.3d 13 (Tex.App.--El Paso

22

2019, pet. denied) (where appellants did not meet their burden of showing that the TCPA applied to appellee's claim, court need not address issues of whether appellee established a prima facie case for his claim or whether appellants had a valid defense to the claim); *see also Pacheco*, 600 S.W.3d at 411 (same).

## VI. CONCLUSION

Because we conclude that CPL has failed to establish that the TCPA applies to Polo's lawsuit, we need not address the other issues raised by the parties. We therefore affirm the trial court's judgment denying CPL's motion to dismiss and remand this matter to the trial court for further proceedings.

JEFF ALLEY, Chief Justice

August 6, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.